OSCAR K. EYSENBACH, PETITIONER, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 21107.    Promulgated February 14, 1928.

*C. H. Garnett, Esq.*, and *E. R. Willson, C. P. A.*, for the petitioner. *Shelby S. Faulkner, Esq.*, for the respondent.

OPINION.

MILLIKEN: It is admitted by respondent that petitioner incurred a loss of $67,000 on his stock in the Choctaw Portland Cement Co. The only issue between the parties is in what year loss was sustained. Petitioner contends that the loss was sustained in the year 1923, while respondent asserts that it was sustained in the year 1921. It clearly appears from the facts found that this loss was not incurred in 1921. Although bankruptcy proceedings were begun in that year, the stockholders then hoped and had reasonable grounds to hope that they would realize something on their stock. Up to the early autumn of 1923, they were making vigorous efforts either to sell the property at private sale or to reorganize the corporation. If the contemplated sales had been effected, or if the corporation had been reorganized, the stock would not have been valueless. In the autumn of 1923, the representatives of the banks which held a large amount of the bonds of the corporation, and also some of its other indebtedness, were called in and it was then determined by all parties concerned that a sale or reorganization of the corporation was an impossibility and that the court should order a judicial sale. The sale was ordered

by the court on December 28, 1923. Although the final terms upon which the representative of the creditors was to purchase were not agreed upon until just prior to the sale, which occurred in February, 1924, the testimony shows that it was not then contemplated that the creditors would protect the stockholders, or that it was hoped that the properties would bring a price which would accomplish more than pay the debts, if that much. The vice president of one of the creditor banks testified:

Q. Do you know whether or not the directors claimed or anybody else claimed at those meetings that there would be a surplus over the debts, for the stockholders, out of this suggested plan?

\*      \*      \*      \*      \*      \*      \*

A. There was not any suggestion made that the stockholders would realize anything on the stock at any conference I was in, in the latter part of 1923.

Q. That point never entered into any of these negotiations at any time?

A. It was a question of trying to cover the bonds and notes. That is all we were interested in.

It is apparent that when the sale was ordered in December, 1923, the stockholders had no reasonable basis for hope that they would realize anything upon their stock. The optimism of the stockholders of the corporation continued through 1921 and 1922, but in the month of December, 1923, it was their well considered opinion that nothing could be recovered, which opinion is amply justified by the facts of record. On the facts as presented, we are of the opinion that petitioner sustained a deductible loss on this stock in the year 1923.

For several years prior to 1923, petitioner was engaged in the business of purchasing and developing mineral leases. The majority of these leases were oil and gas leases. In this line of business, petitioner prior to and in 1921 purchased interests in the lead and zinc leases referred to in the findings of fact and proceeded to develop one of these properties. This effort failed in 1921, after petitioner had expended $30,000. The question presented is, Was this loss a " net loss " as that term is defined in section 204 of the Revenue Act of 1921? The pertinent parts of that section read:

(a) That as used in this section the term " net loss " means only net losses resulting from the operation of *any* trade or business regularly carried on by the taxpayer (including losses sustained from the sale or other disposition of real estate, machinery, and other capital assets, used in the conduct of such trade or business) ; and when so resulting means the excess of the deductions allowed by section 214 or 234, as the case may be, over the sum of the following: \* \* \*    (Italics ours.)

It is to be noted that in order to constitute a " net loss," it is not necessary that taxpayer should sustain the loss in his principal business or vocation. The word " business " is qualified by the word

"any." The taxpayer is entitled to this benefit where the loss is incurred in "any trade or business regularly carried on" by him. That petitioner's activities in oil, gas, zinc and lead constitute a business seems clear. They fall within the definition of "business" given in *Flint* v. *Stone Tracy Co.* 220 U. S. 107; 3 Am. Fed. Tax Rep. 2834, where it was said:

> \* \* \* It remains to consider whether these corporations are engaged in business. "Business" is a very comprehensive term and embraces everything about which a person can be employed. Black's Law Dict. 158, citing *People ex rel. Hoyt* v. *Tax Comrs.* 23 N. Y. 242, 244. "That which occupies the time, attention, and labor of men for the purpose of a livelihood or profit." 1 Bouvier's Law Dict. p. 273.

See *Von Baumbach* v. *Sargent Land Co.*, 242 U. S. 503; 3 Am. Fed. Tax. Rep. 2947, and *Edwards* v. *Chile Copper Co.*, 270 U. S. 452; 5 Am. Fed. Tax Rep. 5855.

That petitioner "regularly carried on" the business of purchasing and developing zinc and lead leases is equally clear. It was not an isolated enterprise. His zinc and lead operations dovetailed with his other mineral operations. On this point petitioner is sustained.

Petitioner did not sustain a loss in 1921 by reason of the razing of the brick building on the land which he and his coowners sold in 1923. By the terms of the lease to Edwards, the latter expressly agreed to tear down the old building and erect a much more valuable one in its stead and to pay rental at the rate of $18,000 a year. This was a mere substitution of one asset for another. The value of the old building was to be paid for in the annual rental of $18,000. If Edwards had carried out his contract the loss sustained by petitioner by reason of the destruction of the building, would have been amortized over the whole term of the lease. *Chas. N. Manning, et al., v. Commissioner*, 7 B. T. A. 286. Since Edwards paid only one installment of the rent, the lessors have recovered in this respect only 1/99th of the value of the building. The loss was incurred in the year in which the sale was made, to wit, 1923. This loss amounted to the depreciated value of the building when razed, less one ninety-ninth of the depreciated value recovered in the one year's rental paid.

The respondent has imposed a penalty of 25 per cent by reason of the failure to file a return for the calendar year 1923. It being clearly evident from the decision here made that the petitioner realized no taxable net income for said year, there is no basis for the imposition of the penalty.

Reviewed by the Board.

*Judgment will be entered on 15 days' notice, under Rule 50.*