MYER DANA, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 50248. Promulgated March 14, 1934.

*Francis C. Stetson, Esq.,* and *Francis R. Lash, Esq.,* for the petitioner.

*T. F. Callahan, Esq.,* for the respondent.

85

OPINION.

MATTHEWS: With the exception of the fair market value of the new building, there is no controversy with respect to the material facts of this case, which are comparatively simple. The petitioner owned a building in the Boston suburb of Woburn, Massachusetts, which he leased in 1926 to the Ross Stores, Inc., for 20 years. The lessee operated chain stores and desired to have a building which would conform to a certain type used by it for all its stores. After considering remodeling the petitioner's old building at a cost of approximately $18,000, the lessee learned that a new building with the same requirements would cost around $30,000, and a proposition.

was made to the petitioner, which he accepted, that he should erect a new building. The petitioner, as lessor, and the Ross Stores, Inc., as lessee, agreed in 1927 to cancel the old lease, to tear down the old building, and to build a new building to be occupied by the lessee under a new 20-year lease at an increased rental, title to the new building to vest immediately in the petitioner. The lessee agreed to pay one half of the cost of demolishing the old building and erecting a new building, provided the total cost did not exceed $30,000, any excess over this amount to be paid by the petitioner. The old building was accordingly torn down in 1927 and the petitioner is claiming herein that he sustained a loss in that year in the amount of $12,634.67, which sum represents the depreciated value of the old building at the time of its demolition. It is the respondent's position that the unextinguished cost of the old building should be treated as a part of the petitioner's capital investment, to be exhausted over the 20-year term of the lease, and the respondent has allowed a deduction in the taxable year of only $631.73, or one twentieth of $12,634.67.

The second issue presented is closely related to the first and grows out of the same transaction. The respondent has treated one half of the cost of the new building, $14,816.14, which was that part borne by the lessee, as income to the petitioner to be apportioned over the term of the lease, thereby increasing the petitioner's income for 1927 by $740.80. The petitioner is contending that the new building had a fair market value in 1927 of not more than $15,000, and insists that his income should be increased by only $183.86, which is the difference between $15,000 and the sum paid by the lessee as its share of the cost of the new building.

We cannot agree with the petitioner's contention that he has sustained a deductible loss, within the meaning of section 214 (a) (4) of the Revenue Act of 1926. It is provided in section 215 (a) (2) that in computing net income no deduction shall in any case be allowed in respect of any amount paid out for new buildings or for permanent improvements or betterments to increase the value of any property or estate. The facts of the instant case present a situation where there was a substitution of assets, a new building advantageously leased for an old building demolished, so that the demolition of the old building did not give rise to any deductible expense in 1927. Its unextinguished cost should be exhausted over the life of the lease. In other words, the value of the old building was to be paid for in the annual rental to be paid under the terms of the new lease. This case is not distinguishable in principle from many cases decided by this Board and by the courts, and is governed by those decisions. *Charles N. Manning*, 7 B.T.A. 286; *William Ward*,

7 B.T.A. 1107; *Oscar K. Eysenbach*, 10 B.T.A. 716; *Anahma Realty Corp.*, 16 B.T.A. 749; affd., 42 Fed. (2d) 128; certiorari denied, 282 U.S. 854; *Mary C. Young*, 20 B.T.A. 692; affd., 59 Fed. (2d) 691; certiorari denied, 287 U.S. 652; *Spinks Realty Co.*, 21 B.T.A. 674; affd., 62 Fed. (2d) 860; certiorari denied, 290 U.S. 636; *Evangeline C. Harper*, 27 B.T.A. 293. It is recognized that there are certain differences in the particular facts of the cases cited, but these differences are not of such a character as to make inapplicable to the instant case the principle applied in these decisions. In this case the old building was not torn down until after the petitioner had owned the property for seven years, and it was demolished in full contemplation of the new lease. This was not an ordinary business replacement, for the evidence clearly shows that the moving cause of the destruction of the old building at that particular time in 1927 was the advantageous terms of the new lease.

We do not need to inquire as to the exact degree of advantage, as petitioner urges, which he gained by the new building and the substituted lease. By the investment of new capital in the sum of $14,816.14, his share of the cost of the new building, the petitioner acquired legal title to a building which had been erected at a cost of $29,632.28 and which replaced an old building of the depreciated value of $12,634.67. Under these circumstances it is obvious that no real loss was sustained. Nor do we consider it significant that the special requirements of the Ross Stores, Inc., resulted in a building of special design which cost more than it might reasonably be worth for general rental purposes, for we must regard the value of the new building in the light of the 20-year lease to a satisfied tenant. So far as we know, petitioner had every reason to believe when the new lease was made in 1927 that he had made a profitable investment in the 20-year lease, and the subsequent history of the lease, with its assignment by the Ross Stores, Inc., to the A. A. Adams Stores, Inc., and the failure of the latter company in March 1930, cannot be taken into account in considering the transaction as of 1927. As was pointed out by the Supreme Court of the United States in *Ithaca Trust Co.* v. *United States*, 279 U.S. 151, value must be determined as of a certain time on the basis of a more or less certain prophecy as to the future, and the subsequent failure of such a prophecy or prospect to be realized in fact cannot affect the determination as of the earlier date. Accordingly, we hold that the petitioner is not entitled to a deduction for a loss on account of the demolition of the old building in 1927, and the respondent did not err in exhausting its unextinguished value of $12,634.67 over the 20-year term of lease.

It remains to determine whether the respondent erred in treating as income to the petitioner over the life of the new lease the lessee's share of the cost of the new building, which amounted to $14,816.14. The petitioner does not deny that the entire new building became the petitioner's property under the lease when it was erected. Under the provisions of article 48 of Regulations 69 [1] the petitioner, as lessor, has the option of reporting as income when completed the fair market value of the improvements made by the lessee subject to the lease, or he may spread over the life of the lease the estimated depreciated value of such improvements at the termination of the lease and report as income for each year of the lease an aliquot part thereof. The petitioner earnestly contends that the fair market value of the new building in 1927 was not more than $15,000 and that he should report only the amount of $183.66, instead of $14,816.14, as income growing out of improvements made by the lessee. For the reasons stated above we sustain the respondent's determination that the fair market value of the new building in 1927 was its total cost, which was $29,632.28. But it is the estimated depreciated value of the improvements at the termination of the lease which may be spread over the life of the lease, under article 48 of Regulations 69, *supra*, and the respondent has added to the petitioner's income an aliquot part of the fair market value of the improvements without any allowance for depreciation over the life of the lease. The parties have stipulated that the amount paid by the lessee covered the cost of the special construction and the special features necessary to erect the type of building required by the lessee. The record discloses that the value of these special features would be exhausted when the lease was ended, for they were required by the lessee and added nothing to the value of the building after the expiration of the lease. We are, therefore, of the opinion that the depreciated value of these improvements at the termination of the lease should be taken to be zero. In these circumstances we hold that the respondent erred in adding to the petitioner's income for 1927 the sum of $740.80 on account of the improvements by the lessee. The proposed deficiency should be reduced accordingly.

*Judgment will be entered under Rule 50.*

---

[1] ART. 48. *Improvements by lessees.*—When buildings are erected or improvements made by a lessee in pursuance of an agreement with the lessor, and such buildings or improvements are not subject to removal by the lessee, the lessor may at his option report the income therefrom upon either of the following bases:

(a) The lessor may report as income at the time when such buildings or improvements are completed the fair market value of such buildings or improvements subject to the lease.

(b) The lessor may spread over the life of the lease the estimated depreciated value of such buildings or improvements at the termination of the lease and report as income for each year of the lease an aliquot part thereof.