Raymep Realty Corp. Inc., and/or Samuel S. Paymer and Joseph J. Paymer, Directors and Trustees in Liquidation v. Commissioner. Rorden Realty Corp. and/or Samuel S. Paymer and Joseph J. Paymer, Directors and Trustees in Liquidation v. Commissioner. Samuel S. Paymer v. Commissioner. Joseph J. Paymer v. Commissioner.
Raymep Realty Corp. v. Commissioner
Docket Nos. 12375, 12376, 12377, 12378.
United States Tax Court
1948 Tax Ct. Memo LEXIS 202; 7 T.C.M. (CCH) 262; T.C.M. (RIA) 48069; April 30, 1948
*202 1. Four corporations were organized solely to hold legal title to various parcels of real property in order to forestall personal creditors of one of two partners who together formed and wholly owned the corporations. Held, that the corporate entity of corporation A in 1937, corporations B and C in 1939, and corporations B, C, and D in 1940, should be disregarded for tax purposes, and that the net profits or losses in those years from the realty owned by them were actually realized by the partners and taxable thereto. Held, further, that because corporation A engaged in business in 1939 and 1940 it was taxable as a separate entity on rentals derived from its own property in those years. Paymer v. Commissioner, 150 Fed. (2d) 334, followed. 2. Corporations A and B filed no corporate income or excess profits tax returns for 1937 and 1939. They each filed corporate income, declared value excess-profits and defense tax returns for 1940 which contained no information about the corporate operations in that year and were also improperly executed. Held, 25 per cent delinquency penalties under section 291 of the Code and the Revenue Act of 1936 were erroneously asserted against *203 corporation A for 1937, 1939, and 1940 and corporation B for 1937 because they realized no taxable income in those years. Held, further, that the failure of corporation B to file valid tax returns in 1939 and 1940 was due to reasonable cause and not due to willful neglect, and a 25 per cent penalty pursuant to section 291 of the Internal Revenue Code may not be imposed. Sidney Paymer, Esq., for the petitioners. Ellyne E. Strickland, for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion These proceedings, consolidated for hearing and decision, involve the following deficiencies and penalties: Raymep Realty Corporation, Inc.
1937
1939
1940
Income tax
$671.95
$840.40
$293.02
Income tax penalty
167.99
210.10
73.25
Excess profits tax
783.51
769.64
Excess profits tax penalty
195.88
192.41
Declared value excess-profits tax
243.98
Declared value excess-profits tax penalty
61.00
Rorden Realty Corporation
Income tax
113.76
Income tax penalty
28.44
Declared value excess-profits tax
84.65
Declared value excess-profits tax penalty
21.16
Samuel S. Paymer
Income tax
$32.37
68.55
Joseph J. Paymer
Income tax
32.84
78.02
*204 The questions for decision are, first, whether the corporate entities of four real estate corporations, wholly owned by Samuel S. Paymer and Joseph J. Paymer, should be recognized for tax purposes and, second, whether delinquency penalties should be asserted against the corporate petitioners for failure to file the proper tax returns for the taxable years. Several adjustments to the incomes of the individual petitioners are not in issue. In addition to the presentation of oral and documentary evidence in these proceedings, the parties have stipulated into this record the testimony and exhibits of a prior proceeding: Samuel S. Paymer, et al., Tax Court Memorandum Opinion, Docket Nos. 108469-108472, entered January 2, 1943 [1 TC M 362]. Findings of Fact Samuel S. Paymer and Joseph J. Paymer, the individual taxpayers herein, are brothers and residents of New York City. They have been in business together as partners since 1900, under the name of "Paymer Brothers", although no written partnership agreement was ever executed. They operated a metal manufacturing enterprise, known as the Central Smelting Company, using the profits of this business to acquire local real *205 estate from time to time. Prior to 1932 the title to this realty was in the names of the two brothers. In 1928 it was decided to erect commercial buildings on some of the lots which they owned. In that year a one-story building was constructed on a piece of property located along Third Street in the Borough of Queens, New York, and rented to Western Carpet Company under a 10-year lease which expired in 1937. In 1929 a similar structure was built on a lot located at the intersection of 50th Avenue and 27th Street in Queens. The brothers leased these premises to Richmond Radiator Company, Inc., by written indenture dated June 28, 1928. This lease terminated on December 31, 1938. Neither of these leases was assigned to subsequent corporate transferees to whom the real estate was conveyed. The rents for the two properties were regularly collected and deposited by the partners in a partnership bank account which had been established in 1912 or 1913. In 1929 Samuel S. Paymer became one of several co-makers on a $1,200 note of Harold Silverman, his brother-in-law, to the National City Bank. On March 31, 1930, the former guaranteed the account of Eastern Smelting & Refining Company, owned *206 by a brother and brother-in-law, with the Bank of the United States. Silverman defaulted on his obligation and Samuel S. Paymer, under a judgment obtained by the National City Bank prior to 1932, began to make monthly payments thereon while at the same time endeavoring to elicit payments from Silverman and the other co-makers. When the Bank of the United States was forced to close in the early days of the depression the Eastern Smelting & Refining Company owed a net amount of approximately $2,000 on its account. This bank also approached Samuel S. Paymer for payment of the debt as guarantor. Samuel S. Paymer knew he was not judgment proof and that if he paid these obligations to the banks he would have little chance of recovering the payments from his defaulting relatives. He anticipated that if he deliberately delayed payment on the obligations there was a possibility that the principal obligors would have time to straighten out their affairs and discharge the liabilities themselves. With this in mind, he and his brother decided to form several corporations for the purpose of holding title to the real estate until the relatives had satisfied their personal debts. On May 21, 1932, Raymep *207 Realty Corporation, Inc., hereinafter sometimes called Raymep, was incorporated under the laws of New York and was granted broad powers to acquire, buy, sell, lease, and exchange real estate, to erect buildings and other structures on any property so acquired, and to own, hold, lease, manage, improve, develop, and generally deal in real property, lands and buildings. The certificate of incorporation authorized the issuance of 100 shares of no par value stock. On June 15, 1932, a meeting of the incorporators and stockholders was held, at which time corporate by-laws were adopted and the issuance of 50 shares of stock to Samuel S. Paymer and a like number to Joseph J. Paymer in exchange for the transfer of the parcel of land located at 50th Avenue and 27th Street in the Borough of Queens, was approved. The minutes of this meeting contained a statement reading as follows: "The said conveyance was and is made with the express understanding that the corporation is only to hold title to the property, the beneficial interest and profits to be in the individual stockholders, and the management and control of the property to be exclusively theirs. It is understood and agreed that this corporation *208 was only organized for the convenience of the shareholders in the management thereof." On the same date the first meeting of the board of directors, consisting of the two brothers, was also held. Samuel S. Paymer was elected president and Joseph J. Paymer was elected vice-president, secretary and treasurer. At a special meeting of the board of directors called on July 19, 1932, the number of directors was increased to four. On June 15, 1932, a deed transferring the aforementioned property, located at 50th Avenue and 27th Street, Queens, to Raymep Realty Corporation, Inc., was executed by the brothers. There was no reservation in the deed transferring the realty from the grantors to Raymep. No other papers were executed reserving any interest in the property to the individuals. Insurance on a warehouse located on the premises was thereafter carried in the name of the corporation. In 1932 Rorden Realty Corporation, hereinafter sometimes called Rorden, was also incorporated in New York. This corporation was likewise created for the same reason that motivated the incorporation of Raymep. Rorden was granted similar powers and the minutes of its meeting of organization contained the *209 same clause as that quoted above. The partners conveyed to Rorden real estate located at 357-361 Borden Avenue, Long Island City, New York, which, at the date of incorporation, was occupied by a tenant. On June 8, 1934, the second floor of the premises was rented to the Superior Dye & Print Works, Inc., under a lease in the name of Rorden which terminated June 30, 1937. Thereafter, the latter tenant continued to occupy the building under the same terms and conditions throughout the taxable years here involved. During the same period Paymer Brothers Realty Corporation was similarly incorporated for the same purpose. A provision identical with that above quoted was also recorded in the minutes of this corporation. The brothers conveyed to Paymer Brothers Realty Corporation a piece of property along Third Street, Borough of Queens, City and State of New York, and another lot on which a large oil tank was located and used for storage purposes by a lessee. On December 14, 1932, Westrich Realty Corporation, hereinafter sometimes called Westrich, was organized under the corporate laws of New York. This corporation was the fourth and final corporation formed by the two brothers to effectuate *210 the purposes above described. Its organizational meeting was held on July 4, 1933, followed by the first meeting of the board of directors 11 days later. Samuel S. Paymer was elected president and secretary, while Joseph J. Paymer became vice-president and treasurer. The corporate minutes contained the same provision which was recorded in the minutes of the other corporations. Each of the two partners received one-half of the 100 shares of no par value stock which were issued in return for the transfer by Paymer Brothers Realty Corporation of the aforementioned property located along Third Street in Queens. This real estate was duly transferred by deed to Westrich on July 5, 1933. With respect to Raymep, Westrich, and Rorden, no corporate meetings were called except for their respective organizational meetings. In addition, they maintained no offices for the transaction of business, all corporate matters being discussed by Samuel S. Paymer and Joseph J. Paymer whenever and wherever they chanced to be together. After the initial elections of corporate directors and officers, no other elections of these officials were ever conducted. Their respective boards of directors were never *211 called together to authorize or ratify the conduct of business by either or both of the brothers. Samuel S. Paymer and Joseph J. Paymer, officers and sole stockholders of each of the four corporations, never paid any money for the respective shares of stock, the sole consideration therefor being the transfers of realty by deeds following corporate formation. After the corporations were organized all receipts and disbursements relating to the real estate owned thereby continued to be handled by the two partners as partnership business. No regular corporate books or records were maintained. The rents were collected from the lessees by the brothers and from 1932 to 1936 or 1937 were deposited in hotchpot in the partnership banking account. At some time during the latter years, this account was transferred to a new one in the name of Paymer Brothers Realty Corporation, into which all subsequent rental receipts were deposited in the same fashion. No other banking accounts were ever established. Carrying charges on the realty and other expenses connected therewith were met by payments out of the bank accounts above described. The partners used the remaining funds on deposit to meet their *212 individual living requirements and to further their independent business interests. On December 9, 1937, Raymep Realty Corporation, Inc., and Richmond Radiator Company, Inc., entered into a new lease for the same premises covered by the earlier lease of June 28, 1928. The new rental agreement extended the old lease for an additional term of years beginning January 1, 1939, and terminating December 31, 1944. Early in 1938 a loan of $50,000 was negotiated by Raymep from The Guardian Life Insurance Company of America. On March 22, 1938, Raymep entered into an agreement with the insurance company whereby all rights, profits and interest arising out of the leases dated June 28, 1928, and December 9, 1937, (Richmond Radiator Company, Inc., lessee) were assigned to the insurance company as security for the loan. In the formal agreement, signed by Samuel S. Paymer, president, Raymep expressly covenanted that the aforesaid leases were in full force and effect and that Raymep was "the sole and absolute holder and owner of said leases and of all right, title and interest of the landlord in, to and under said leases". The money received under the loan was used to pay off an existing mortgage *213 on the premises. Neither Rorden nor Paymer Brothers Realty Corporation borrowed any money while in esse. Franchise taxes for each of the four corporations were paid in 1938 to the State of New York by the two brothers. They also used the single bank account to meet local real estate tax bills which were imposed in the taxable years. Federal capital stock tax returns were filed by Raymep for the fiscal years ended June 30, 1937, 1938, 1939, and 1940. Westrich filed a capital stock tax return for the fiscal year ended June 30, 1938. Rorden filed a capital stock tax return for the fiscal year ended June 30, 1940. No corporate income tax or excess profits tax returns for the years 1932 to 1939, inclusive, were filed by Raymep, Rorden, or Westrich. For the calendar year 1940 the corporate income, declared value excess profits, and defense tax returns, Form 1120, were filed by Raymep and Rorden, signed and verified by Samuel S. Paymer, president. They contained no entries of any kind except for the statement "No Operations". A similar statement was made on the capital stock tax returns filed as above described. Partnership returns for Paymer Brothers were filed for the years from *214 1937 to 1940, inclusive. The income and expenses for each of the four corporations were included in these returns; the reported net income, determined by reducing the earnings and losses of the respective corporations to a final net figure, was treated as the income of the partners. The receipts and disbursements related to the real estate held by the corporations during these years are set forth below: Paymer Bros.
1937
Raymep
Rorden
Westrich
Realty Corp.
Total
Rental receipts
$18,999.96
$6,000.00
$3,025.00
$1,200.00
$29,224.96
Total income
19,328.01
6,000.00
3,025.00
1,200.00
29,553.01
Total expenses
10,773.92
5,354.14
3,759.12
1,344.00
21,231.18
Net income
$ 8,554.09
$ 645.86
($734.12)
($144.00)
[1] 8,321.83
1938
Rental receipts
$18,999.96
$6,000.00
$3,300.00
$1,200.00
$29,499.96
Net expenses
9,416.42
6,492.16
2,716.68
2,259.70
20,884.96
Net income
$ 9,583.54
($492.16)
583.32
($1,059.70)
[1] $ 8,615.00
1939
Rental receipts
$14,450.00
$5,900.00
$2,575.00
$ 500.00
$23,425.00
Total expenses
6,421.46
5,794.75
3,244.46
1,156.78
16,617.45
Net income
$ 8,028.54
$ 105.25
($669.46)
($656.78)
[1] $ 6,807.55
1940
Rental receipts
$10,200.00
$7,200.00
$17,400.00
Total expenses
9,298.80
5,713.92
3,483.51
2,433.83
20,930.06
Net income
$ 901.20
$1,486.08
($3,483.51)
($2,433.83)
[1] ($3,530.06)
*215 During the taxable years the assets of each corporation were confined to a single piece of real property. They were all dissolved in 1941. Nathaniel Miller, certified public accountant in the State of New York, has been retained by the two brothers as their accountant since 1932. From that date through the taxable years he prepared all Federal tax returns for their signatures. Because of their general unfamiliarity with tax problems, he had general instructions to handle all accounting and tax matters pertinent to their affairs. All the business records were made available to him. Miller was familiar with the conditions surrounding the formation of the corporations and the attitude of the brothers with respect to the realty income. He advised the partners and the corporations that the corporations were not subject to Federal tax liability under the law, and in reliance on the advice so given neither Raymep nor Rorden filed tax returns for the years 1937 and 1939. For the year 1940, following the advice of Miller, both Raymep and Rorden filed corporate returns on Form 1120, as described *216 above. Opinion ARUNDELL, Judge: It is a well established rule of law that a corporation and its stockholders are treated as separate legal entities and these entities will not ordinarily be disregarded for tax purposes. Dalton v. Bowers, 287 U.S. 404; Burnet v. Clark, 287 U.S. 410; Burnet v. Commonwealth Improvement Co., 287 U.S. 415. An exception to the latter rule has been approved by this and other courts whereby a corporation formed solely to become the passive holder of title to real property may be ignored tax-wise by the individual taxpayer responsible for its creation, provided it does not engage in actual business activities. North Jersey Title Ins. Co. v. Commissioner, 84 Fed. (2d) 898; Moro Realty Holding Corp., 25 B.T.A. 1135, aff'd., per curiam, 65 Fed. (2d) 1013; United States v. Brager Building & Land Corp., 124 Fed. (2d) 349; Paymer v. Commissioner, 150 Fed. (2d) 334. Cf. Moline Properties, Inc. v. Commissioner, 319 U.S. 436; Commissioner v. National Carbide Corp., 167 Fed. (2d) 304, (C.C.A. 2d) March 31, 1948. The primary question *217 for decision is whether the corporations organized by the individual petitioners fall within the above excepted category. The petitioners contend that the corporations were mere dummies organized colely to hold legal title to real estate, that they had no other functions and performed none, that the beneficial interest to the realty was in their stockholders and, therefore, that their corporate entities should be disregarded for tax purposes. Respondent urges that the corporate petitioners should be recognized and that they are liable for income, excess profits, and declared value excess-profits taxes on the rental income derived from the lessees of their respective properties during the taxable years herein. In an earlier proceeding Raymep Realty Corporation, Inc., Westrich Realty Corporation, Samuel S. Paymer, and Joseph J. Paymer were before us as petitioners. The question in issue was identical with that herein except that it concerned the taxability of rental income realized in 1938 from the property held by the two corporate petitioners. We decided that on the basis of the evidence presented, both corporations were sufficiently active in the transaction of business to warrant *218 the imposition of Federal tax liabilities on them for that taxable year. Samuel S. Paymer, supra. The Court of Appeals for the Second Circuit did not completely agree with us, however. In taking the view that the corporate entity of Westrich should be ignored taxwise, the court concluded: "Westrich, however, was at all times but a passive dummy which did nothing but take and hold the title to the real estate conveyed to it. It served no business purpose in connection with the property and was intended to serve only as a blind to deter the creditors of one of the partners. It was but a sham to be disregarded for tax purposes." This holding was based on the cumulative factors that Westrich was originally created for the sole reason of holding bare legal title to real estate while the beneficial interest remained in Samuel and Joseph Paymer; that this limitation was unequivocally expressed in the minutes recording the meeting of organization; that Westrich maintained no office, no books of account, no capital, no bank account, no employees; that no election of officers or corporate meetings of the board of directors authorizing or ratifying business transactions occurred subsequent *219 to initial organization; that the two partners did not assign the leasehold to Westrich but continued to manage the real estate, collecting the rental receipts and defraying the expenses, and deposited the proceeds in a common bank account from which they drew the net profits to meet their varying individual needs; and that Westrich did not actively carry on business. In the case at bar, we have before us another of the corporations, Rorden Realty Corporation, which was created under the same circumstances, for the same purposes, and in the same manner as Westrich except for the fact that its property was rented to a tenant in 1934 under a lease, in the corporate name, which expired in 1937. The manner of its operation, the collection or enjoyment of the rental income, and all other activities during its corporate existence were identical with those of Westrich. In deference to the holding of the Circuit Court of Appeals and for the further reason that the execution of the lease in 1934 was a purely nominal adjunct to the holding of title rather than an independent and extended business activity, we conclude that Rorden, as a corporate entity, may be completely disregarded for tax *220 purposes. In the earlier proceeding, we held that Raymep Realty Corporation, Inc., was a separate jural person and the Circuit Court of Appeals affirmed us in the following language: "We think that Raymep was active enough to justify holding that it did engage in business in 1938. The absence of books, records and offices and the failure to hold corporate meetings are not decisive on that question. Though Raymep was organized solely to deter creditors of one of the partners, it apparently was impossible or impracticable to use it solely for that purpose when it became necessary or desirable to secure the above mentioned loan in a substantial amount." Its corporate identity is now in issue for the years 1937, 1939, and 1940. The activities of Raymep in 1937 were essentially equivalent to those of Westrich in 1938 except for the execution of a lease on December 9 of that year, not to be effective until after the existing lease terminated in 1938. In March, 1938, Raymep negotiated a mortgage loan of $50,000, assigning its rights, profits, and interest in the two leases on the property as security but retaining the right to collect rents and other charges thereunder. The evidence *221 does not disclose that this obligation was liquidated during 1939 or 1940. Raymep was still subject to the provision in the assignment agreement that the mortgagee insurance company could demand immediate payment of the principal sum, together with interest thereon, in event of default, breach or violation of the terms of the instrument. Accordingly, on the authority of Paymer v. Commissioner, supra, we hold that Raymep was not subject to corporate taxes in 1937 but that its separate existence in 1939 and 1940 must be respected by virtue of its continued participation in a business arrangement during those years. The individual tax liabilities of Samuel S. Paymer and Joseph J. Paymer are in issue for the years 1939 and 1940. In determining their annual net incomes it was their practice to offset the current deficits of those corporations sustaining losses against the current profits of the other corporations. While it is true that Westrich and Paymer Brothers Realty Corporation, both of which incurred losses in 1939 and 1940, are not parties litigant, we would be unable to fix the proper tax liability of the brothers without also deciding whether they may treat the corporate *222 losses as their own. We are satisfied that Westrich was no more active in 1939 and 1940 than in 1938 and, therefore, that its losses were directly imputed to the individual petitioners. We reach a similar conclusion with respect to the losses of Paymer Brothers Realty Corporation in those years. This corporation was formed for the same purposes and in the same manner as its contemporaries. While the partners opened a bank account in the name of Paymer Brothers Realty Corp., the evidence clearly shows that the account was a mere continuation of the old partnership account into which the rents derived from all property were deposited without segregation or identification, and from which funds were freely withdrawn by the partners to meet their various business or personal requirements. In our judgment the use of the corporate name for this bank account cannot be regarded as the carrying on of a business actively by the Paymer Brothers Realty Corp. In summary, the individual petitioners properly treated the aggregate losses of Westrich and Paymer Brothers Realty Corporation and the net income of Rorden in 1939 and 1940 as their own, and they are also personally liable for income taxes *223 on the income of Raymep which they received in those years. In view of our decision that Rorden Realty Corporation had no taxable income of its own in the taxable years before us, it follows that it was not subject to any of the delinquency penalties claimed by respondent. Oscar K. Eysenbach, 10 B.T.A. 716; F. Hunt Lowry, 11 B.T.A. 409; Mollie Netcher Newbury, Trustee, 31 B.T.A. 41; Oklakoma Contracting Corp., 35 B.T.A. 232. A similar holding as to the tax liability of Raymep Realty Corporation, Inc., for 1937 precludes the application of penalties for that year. Although we have concluded that Raymep was liable for corporation taxes in 1939 and 1940, we are convinced that the determination by the respondent of 25 per cent delinquency penalties for those years was erroneous. In 1939 Raymep filed no return. In 1940 it filed a form, No. 1120, which bore the notation "No Operations" and otherwise contained none of the detailed information required. This form was, moreover, improperly executed, in that it was not signed or sworn to by Raymep's treasurer, as required by section 52(a), Internal Revenue Code. For *224 all practical purposes it was no return at all. The failure to file any return for 1939 and the filing of the incomplete return in 1940 was the result of advice given by petitioner's accountant, who was entirely familiar with the facts and circumstances surrounding operation of the entire business. It now seems settled law that bona fide reliance by a taxpayer on the advice of a licensed accountant, such as occurred herein, amounts to the exercise of such ordinary business prudence as to constitute reasonable cause for failure to file a return. Hatfried, Inc., v. Commissioner, 162 Fed. (2d) 628; Orient Inv. & Finance Co., Inc., v. Commissioner, 166 Fed. (2d) 601 (App. D.C.), February 2, 1948. We are aware that in Samuel S. Paymer, supra, we held a penalty was applicable in 1938 against the Raymep Corporation, and this holding was affirmed on appeal to the Second Circuit under the Dobson principle. More recent cases of this Court and of the Circuit Courts now require the more liberal treatment accorded in this opinion. Brooklyn & Richmond Ferry Co., 9 T.C. 865; Garrett Holding Corp., 9 T.C. 1029; Hatfried, Inc., v. Commissioner, supra; *225 Orient Inv. & Finance Co., Inc., v. Commissioner, supra.
Decision will be entered under rule 50. Footnotes
1. These amounts were reported in the partnership returns filed for the respective years.↩