J. C. WYNNE, PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

FLEET WYNNE, PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE RESPONDENT.

Docket Nos. 108874, 108875.   Promulgated September 22, 1942.

*Harry C. Weeks, Esq.*, for the petitioners.
*D. D. Smith, Esq.*, for the respondent.

OPINION.

OPPER: Although that fact does not appear, it seems to be assumed by the parties that the installment note in controversy had been received in payment for property which cost petitioners nothing, so that capital gain was realized in the year when that transaction occurred, which only the installment sale provisions of section 44 prevented from being taxable in its entirety at that time. The dispute is whether an acceleration of the tax due on the unpaid installments was brought about in the instant year by the dissolution of the debtor corporation and assumption of the debt by a successor partnership of which petitioners were members, under Revenue Act of 1938, section 44 (d).[1]

The contention, of course, is that the obligation was disposed of by the transaction, since petitioners could not be their own debtors and the dissolution and transfer to the partnership would have brought that about if the obligation is not viewed as having been discharged.

One or two preliminaries should be clarified at the threshold. Respondent rests upon section 44 (d) and continually refers to the "sale, exchange, or disposition" of the installment note. But it was the obligor corporation which dissolved and, of course, a debtor can not sell or otherwise transfer its creditor's rights. A debt can not be considered a corporate asset available for liquidating distribution. This disposes of the reference to *Waddell* v. *Commissioner* (C. C. A., 5th Cir.), 102 Fed. (2d) 503, relied upon by respondent for some obscure purpose. What probably lurks in the contention is that the debt was "satisfied" upon the liquidation, either by its assumption by petitioners' partnership, or by the transfer of assets

---

[1] SEC. 44. INSTALLMENT BASIS.

\* \* \* \* \* \* \* \*

(d) GAIN OR LOSS UPON DISPOSITION OF INSTALLMENT OBLIGATIONS.—If an installment obligation is satisfied at other than its face value or distributed, transmitted, sold, or otherwise disposed of, gain or loss shall result to the extent of the difference between the basis of the obligation and (1) in the case of satisfaction at other than face value or a sale or exchange—the amount realized, or (2) in case of a distribution, transmission, or disposition otherwise than by sale or exchange—the fair market value of the obligation at the time of such distribution, transmission, or disposition. Any gain or loss so resulting shall be considered as resulting from the sale or exchange of the property in respect of which the installment obligation was received. The basis of the obligation shall be the excess of the face value of the obligation over an amount equal to the income which would be returnable were the obligation satisfied in full. This subsection shall not apply to the transmission at death of installment obligations if there is filed with the Commissioner, at such time as he may by regulation prescribe, a bond in such amount and with such sureties as he may deem necessary, conditioned upon the return as income, by the person receiving any payment on such obligations, of the same proportion of such payment as would be returnable as income by the decedent if he had lived and had received such payment. If an installment obligation is distributed by one corporation to another corporation in the course of a liquidation, and under section 112 (b) (6) no gain or loss with respect to the receipt of such obligation is recognized in the case of the recipient corporation, then no gain or loss with respect to the distribution of such obligation shall be recognized in the case of the distributing corporation.

in an amount equal to the unpaid balance. But, of course, a satisfaction would not be a sale or exchange. *Hale* v. *Helvering* (App. D. C.), 85 Fed. (2d) 819. And if this were a satisfaction in the strict sense, section 44 (d) does not reach it, for that provision operates only if the obligation "is satisfied at other than its face value" and respondent makes clear his position that the $50,000 remaining due was scrupulously and exactly discharged upon the liquidation.

It does not follow, however, that respondent has no remaining refuge. Subdivisions (a) and (b) require that taxpayers return as income the proper proportion "of the installment payments actually received in that year." If, therefore, this obligation was discharged in full by a payment "actually received," the deficiency would be supportable. But there are other difficulties with it.

Whatever may be the merits in other fields of the controversy respecting the entity theory of partnerships, it is now too late to question it in the law of taxation, at least in certain situations. We know, for example, that "ownership by the partnership is not identical with ownership by the partners" and that partnership property does not, in the absence of statute,[2] retain the individual partner's basis, *Edward B. Archbald*, 27 B. T. A. 837; affd. (C. C. A., 2d Cir.), 70 Fed. (2d) 720; that a partner may be indebted to his partnership, *Finucane* v. *United States* (Ct. Cls.), 21 Fed. Supp. 122; and, what is most relevant to the present discussion, that a partnership may own stock, *D. C. Jackling*, 9 B. T. A. 312, and *Edward B. Archbald*, *supra*, and may be indebted to one of its members, *Samuel Burns*, 13 B. T. A. 579.

On the rock presented by this principle the entire vessel of respondent's argument founders. For it is only the disappearance of the installment obligation or its removal from the hands of the obligee that creates the occasion for invoking the provisions of section 44 (d), or, more properly as applied to this proceeding, of section 44 as a whole. See H. Rept. 2, p. 16, and S. Rept. 960, p. 24, 70th Cong., 1st sess. If the obligation is paid in full in anticipation, which is what respondent says occurred here, or if it is otherwise discharged or transferred, as described in subsection (d), the obligee will have no future tax liability upon the due date of subsequent installments, and hence the tax situation must be liquidated contemporaneously. But if, as we think was the case here, the installment note remained to be collected by the same obligee from the partnership which replaced the old obligor, cf. *Samuel Burns*, *supra*, there was no prospect of a termination of the continuing tax liability of these petitioners on future installments and hence no necessity for

[2] See, e. g., Revenue Act of 1934, sec. 113 (a) (13).

construing the assumption by the partnership as a payment in full under subdivision (a) or (b) or as resulting in gain or loss under subdivision (d).

We have found as a fact, at respondent's request, that the corporate assets were distributed to the partnership, so that there is no basis for assuming that petitioners received them directly in payment of the debt. *Langstaff* v. *Lucas* (C. C. A., 6th Cir.), 13 Fed. (2d) 1022; certiorari denied, 273 U. S. 721, is not to the contrary, for that case dealt only with the distribution of corporate surplus, the excess of assets over admitted and recognized liabilities, the treatment of which here is concurred in by both parties. Since there is nothing in these individual circumstances or in the general principles to be applied which casts doubt upon the continued existence of the installment obligation, the continued liability of the partnership for its discharge, and its continued status as a source of taxable income in the hands of these petitioners, we think this part of the deficiency was improvidently determined.

The remaining question is the amount of gain resulting from the corporate liquidation, and specifically whether the undisputed value of the assets distributed may be reduced by a contested outstanding Federal tax claim.

In considering this point we must recognize that although a partnership may be an entity separate from its members for tax-computing purposes, yet a distribution in liquidation by a corporation of which the partners were stockholders is to be treated as a liquidating dividend taxable ultimately to the partners as of the date of liquidation. On this point the parties are in agreement. And see *Snead* v. *Elmore* (C. C. A., 5th Cir.), 59 Fed. (2d) 312. As a consequence, we consider it permissible to treat this phase of the transaction as though the partnership and the partners were interchangeable.

So approached, the short result is that the partnership directly, and the partners indirectly, received assets of a value which is not in controversy, in exchange for the stock and their agreement to pay certain debts. The definite and contractually specified amount of the undisputed liabilities represented corresponding diminution in the profit accruing from the exchange of stock for assets, the deductibility of which from the gain on liquidation no one is disposed to question. But the contested tax claim, which was uncertain both as to enforceability and as to amount, and was subsequently discharged for a nominal sum, is another matter.

We think the correct result is dictated by the principle of *Board* v. *Commissioner* (C. C. A., 6th Cir.), 51 Fed. (2d) 73, and *North American Oil Consolidated* v. *Burnet*, 286 U. S. 417. This property

was received "under a claim of right and without restriction as to its disposition." The contested and wholly contingent assumed liability for taxes was hence no proper offset. The taxpayer "has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent." Whether payment of a substantial amount in a subsequent year would have given rise to a deduction then or would be the proper subject of an adjustment in the year here in issue, since that remains open, it is not necessary to decide. See *E. B. Elliott Co.*, 45 B. T. A. 82; cf. *North American Oil Consolidated* v. *Burnet*, *supra*. For the insignificant payment actually made has been recognized by respondent in his computation. We can not say that this is error. *Benjamin Paschal O'Neal*, 18 B. T. A. 1036.

That the parties might have been liable as transferees even in the absence of their agreement of assumption, or that the tax claim was set up as a contingent liability on the partnership books, seems to us inconclusive factors. The important circumstance is that the claim was never recognized as valid and that the transferee continued to contest it. See *William M. Davey*, 30 B. T. A. 837. It never agreed to pay more than was actually paid, since this is all that was ultimately found to be due. We see no reason why more should be deducted.

*Decision will be entered under Rule 50.*