Reviewed by the Special Division.

*Decision will be entered under Rule 50.*

GEORGE A. BUTLER AND ANNE G. BUTLER, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 69489.    Filed September 19, 1961.

*William C. W. Haynes, Esq.*, for the petitioners.
*D. Louis Bergeron, Esq.*, for the respondent.

FISHER, *Judge:* Respondent determined a deficiency in the income tax of petitioners for the taxable year 1952 in the amount of $10,596.16.

---

[43] Docket No. 37675.

The sole question presented for our consideration is whether loans aggregating $50,000 made by petitioner to a partnership of which he was a limited partner are to be treated as a business bad debt under section 23(k)(1) of the Code of 1939 or as a nonbusiness bad debt under section 23(k)(4) thereof.

### FINDINGS OF FACT.

Most of the facts have been stipulated and, together with exhibits, are incorporated herein by reference.

George A. and Anne G. Butler, husband and wife, are residents of Houston, Harris County, Texas, and filed their joint income tax return for the taxable year 1952 with the district director of internal revenue for the district of Texas, Austin, Texas.

Anne G. Butler is named as a petitioner herein only because she filed a joint return with her husband.

Throughout the period involved, George A. Butler, hereinafter referred to as petitioner, was the senior member of a law firm located in Houston, Texas.

On the dates listed below petitioner advanced to National Housing Company, Ltd., a limited partnership, the following amounts:

| Date | Amount |
|---|---|
| Nov. 27, 1950 | $20,000.00 |
| Mar. 29, 1951 | 1,000.00 |
| Subtotal | 21,000.00 |
| Nov. 26, 1951 | 250.00 |
| Dec. 3, 1951 | 100.00 |
| Dec. 11, 1951 | 200.00 |
| Jan. 21, 1952 | 105.81 |
| Total | 21,655.81 |

About April 9, 1951, John Allen Boyle, as the general partner, and petitioner, as the special partner, executed a partnership agreement which provides as follows:

The parties hereto hereby agree to become partners for the purposes, during the time and upon the terms and conditions hereinafter set out:

#### I.

The partnership shall be a limited partnership under the laws of the State of Texas. Boyle shall be the general partner, and Butler, who has contributed to the capital of the partnership the sum of TWENTY THOUSAND AND NO/100 ($20,000.00) DOLLARS in cash and who shall be entitled to receive twenty-five (25%) percent of the profits of the partnership, shall be a limited partner.

#### II.

The business of the partnership shall be the completion of design, development and experimental work of a similar nature under U.S. Government Con-

tract No. DA–44–009 eng–325, Requisition No. 41/35, Project No. 8–71–04–002, issued by Engineer Research and Development Laboratories, Fort Belvoir, Virginia to National Housing Company, Ltd., a predecessor partnership, and the construction and sale of houses to the U.S. Government pursuant to plans evolved in connection with such design, development and experimental work. Such business shall be carried on under the name "NATIONAL HOUSING COMPANY, LTD." at Dallas, Texas, and at such other place or places as the interest of the partnership may require.

## III.

Boyle, as general partner, shall alone be authorized to transact business and sign for and bind the partnership.

## IV.

The partnership shall commence on the date hereof and, unless sooner terminated under other provisions herein or by the death of one of the partners, shall terminate at the expiration of five (5) years from the date hereof; provided, however, Butler may, at his option, terminate the partnership one (1) year from the date hereof by giving at least sixty (60) days' written notice to Boyle of such intention; and after one (1) year from the date hereof Butler may terminate the partnership on any date prior to the expiration of five (5) years from the date hereof by giving at least sixty (60) days' written notice to Boyle of his intention to so terminate on the date fixed in such notice.

## V.

Boyle shall devote such amount of time and effort to the affairs of the partnership as shall be necessary for the consummation of the purposes for which it is created and the proper performance of all its undertakings.

Butler has contributed to the capital of the partnership the sum of TWENTY THOUSAND AND NO/100 ($20,000.00) DOLLARS in cash, which amount shall be credited to the Capital Account (as hereinafter defined) of Butler in the records of the partnership. Butler shall not be required to devote any time or effort to the affairs of the partnership.

## VI.

The bank of the partnership shall be Republic National Bank, Dallas, Texas, or such other bank or banks as the partners shall from time to time agree upon. All partnership money shall, as and when received, be deposited in the bank to the credit of the partnership account.

## VII.

All costs, charges and expenses which shall be incurred in or about the business of the partnership or in anywise related thereto, and all losses which shall happen in respect thereto shall be paid out of the income or capital of the partnership. To the extent that such costs, charges, expenses and losses shall exceed the income and capital of the partnership, they shall be borne by Boyle.

Subject to the limitation set out in the preceding sentence as to the extent to which Butler shall bear losses of the partnership, the net profits or the losses of the partnership shall belong to or shall be borne by, as the case may be, the partners in the following proportions:

Boyle    75%
Butler    25%

## VIII.

Proper books of account shall be kept, wherein shall be entered such particulars of all transactions, matters and things relating to the business of the partnership as are usually entered in books of account which would normally be kept by persons engaged in a business of like character. Said books of account, together with all documents concerning or belonging to the partnership (except such as may be properly kept elsewhere for safe keeping) shall be kept at the place of business of the partnership, and each partner shall at all times have free access to and right to inspect same.

As soon as is practicable after the close of each fiscal year of the partnership, which fiscal year shall be such as is agreed on by the partners, financial statements, including a balance sheet and profit and loss statement in reasonable detail, shall be prepared for the partnership for such fiscal year by Lybrand, Ross Bros. and Montgomery, Certified Public Accountants, and a copy thereof shall be furnished to each of the partners. Such financial statements shall be conclusive as to the financial affairs of the partnership for such fiscal year unless some error shall have been discovered therein within three (3) calendar months after they are furnished to the partners (or unless some manifest error shall be discovered at any time) in either which case, the error shall be corrected.

The profit or loss disclosed by such financial statements shall (subject to the provisions herein with respect to limitation of the extent to which Butler shall bear losses of the partnership) be credited or charged to an account maintained in the records of the partnership for each of the partners, which account is sometimes herein called "Capital Account". The Capital Account of a partner shall be credited with any contribution to the capital of the partnership made by such partner and shall be charged with withdrawals of funds of the partnership made by him.

## IX.

No withdrawals of funds of the partnership shall be made by either partner except out of profits of the partnership and on agreement by both partners. Any such withdrawal shall be made by the partners in the same proportion as their share in the profits of the partnership.

Butler shall, when requested to do so by Boyle, guarantee payment of a promissory note or notes of the partnership payable to Republic National Bank, Dallas, Texas, subject to the following terms and conditions:

(1) No such note shall be required to be guaranteed by Butler unless, prior to such guarantee, the partnership shall have entered into a contract with the United States Government for the construction of houses and the amount of such note is not in excess of the amount of funds then needed by the partnership for orderly prosecution of work under such contract; and,

(2) Any such note shall be payable on or before one year from its date.

If payment of any promissory note of the partnership shall have been guaranteed by Butler hereunder and such note shall become due and payable and if, at such time, the partnership is unable to pay such note without impairing the amount of working capital required to be maintained by it for the orderly conduct of its business, Butler shall, if requested by Boyle, guarantee a promissory note or notes given by the partnership to Republic National Bank in renewal and extension of the unpaid principal amount of such note or such portion thereof as is needed for working capital. Any such note or notes given in renewal or extension shall mature on or before one (1) year from the due date of the indebtedness so renewed or extended, and in no event shall Butler be required to guarantee any indebtedness of the partnership which matures later

than the earliest date on which this partnership may be terminated by a partner under the provisions of Article IV hereof.

Notwithstanding any other provision herein, Butler shall not be required to guarantee any indebtedness of the partnership to said Bank if, after doing so, the aggregate amount of indebtedness of the partnership guaranteed by him would exceed ONE HUNDRED FIFTY THOUSAND AND NO/100 ($150,000.00) DOLLARS.

To the extent that Butler shall pay any indebtedness of the partnership to Republic National Bank pursuant to a guaranty thereof under this Article IX, he shall, to the extent permitted by law, be subrogated to the rights of such bank.

### X.

Any patents, copyrights, trade marks or similar property rights relating to the business of the partnership shall belong to Boyle, but the partnership shall have the exclusive right (except those reserved by the U.S. Government) to the use of same during the continuance of the partnership.

### XI.

If either partner shall:

(a) be, in any respect other than just and faithful to the other partner, or shall fail to give the other partner full information with respect to all matters relating to the affairs of the partnership; or

(b) commit an act of bankruptcy; or

(c) commit any criminal offense involving moral turpitude; or

(d) become physically or mentally unfit to attend to business; or

(e) do or suffer any act which would be a ground for dissolution of the partnership by a court;

then, and in any case, the other partner may terminate the partnership by notice in writing to such partner, or if he be mentally incompetent, to his guardian. In the event the partnership is terminated under the provisions of this paragraph, the partner giving the notice hereinabove provided shall, to the exclusion of the other partner, have authority to wind up the affairs of the partnership.

### XII.

If upon the termination of the partnership, any notice thereof to parties other than the partnership be required or proper, each partner shall sign and concur therein; but if a partner refuses to do so, the other partner may sign the name of such refusing partner to any such notice. Upon the termination of the partnership, a full and general account shall be taken of all transactions of the partnership, its assets and liabilities, and with all convenient speed, the assets of the partnership shall be sold, realized and collected, and the profits applied in paying and discharging liabilities and expenses of winding up the partnership affairs, and, subject thereto, to paying to each partner the capital, if any, due such partner. Each partner shall execute and concur in all necessary and proper instruments and accounts for effecting and facilitating the matters in this paragraph provided.

About April 10, 1951, there was filed with the county clerk of Dallas County, Dallas, Texas, where the partnership had its principal place of business, the following document:

THIS IS TO CERTIFY that the undersigned are forming a limited partnership and that:

The name or firm under which the partnership is to be conducted is "NATIONAL HOUSING COMPANY, LTD."

The general nature of the business to be transacted is the completion of design, development and experimental work of a similar nature under U.S. Government Contract No. DA–44–009 eng–325, Requisition No. 41/35, Project No. 8–71–01–002, issued by Engineer Research and Development Laboratories, Fort Belvoir, Virginia to National Housing Company, Ltd., a predecessor partnership, and the construction and sale of houses to the U.S. Government pursuant to plans evolved in connection with such design, development and experimental work.

The names of all the General and Special Partners interested therein, distinguishing which are General and which are Special Partners and their respective places of residence follow:

| Name | Place of Residence |
|---|---|
| John Allen Boyle, General Partner | Dallas, Dallas County, Texas |
| George A. Butler, Special Partner | Houston, Harris County, Texas |

The amount of Capital Stock which the Special Partner has contributed to the Common Stock is as follows:

George A. Butler, $20,000.00 in cash;

The period at which the partnership is to commence is the 9th day of April, 1951 and the period at which it is to terminate is at the expiration of five (5) years from the date hereof.

On April 16, 1951, a loan totaling $50,000 was made to petitioner by the Republic National Bank of Dallas, all of which was paid over to the limited partnership.

The loan application disclosed that $20,000 of the loan was to be used by petitioner to buy into National Housing Company, Ltd., and the balance of $30,000 was to be loaned to said partnership, petitioner to be subrogated into advances made by the bank to the partnership.

According to notations on the loan application made by the bank's credit department, petitioner's net worth on December 31, 1950, was as follows:

| | |
|---|---|
| Stocks and bonds | $1,786,900 |
| Oil interests and equipment | 147,500 |
| Unexplained | 321,900 |
| Total assets | 2,256,300 |
| Total liabilities | 420,800 |
| Net worth | 1,835,500 |

Said application further disclosed that petitioner also owned a homestead having a value of $121,200, and personal assets totaling $7,500, which were not included in the net worth total above.

On April 16, 1951, Boyle, the general partner, executed on behalf of the limited partnership a note in the amount of $30,000 made payable to petitioner for the amount loaned by petitioner to the limited partnership.

On or about March 16, 1953, petitioners filed a joint income tax return, Form 1040, for the taxable year 1952 wherein they reported a taxable net income computed as follows:

| | |
|---|---|
| Directors' fees | $1,750.00 |
| Dividends | 30,267.25 |
| Interest income | 4,568.43 |
| Income from partnership (net) | 22,628.13 |
| Net long-term capital gains | 107,385.20 |
| Loss from oil operations | (58,565.07) |
| Loss on liquidation of National Housing Company, Ltd | (71,655.81) |
| Travel expense | (13.15) |

| | | |
|---|---|---|
| Adjusted gross income | | [1] 36,364.96 |
| Less: | | |
| Contributions | $6,520.29 | |
| Interest paid | 17,925.82 | |
| Taxes paid | 1,073.86 | |
| Total deductions | | 25,519.97 |
| Net income | | 10,844.99 |

[1] The correct figures for adjusted gross income and net income are $36,364.98 and $10,845.01, respectively.

The partnership net income reported by petitioner on his return for 1952 in the amount of $22,628.13 was derived from the law firm of which he was a partner.

About June 28, 1955, a delinquent partnership return for National Housing Company, Ltd., was prepared and filed by Boyle, the general partner, for the period April 7, 1951, to March 31, 1952, disclosing a loss of $203,377.43, distributable as follows:

| | |
|---|---|
| John Allen Boyle | $183,377.43 |
| George A. Butler | 20,000.00 |
| Total loss reported | 203,377.43 |

The balance sheets which were a part of said return disclosed the following:

| Assets: | Apr. 7, 1951 | Mar. 31, 1952 |
|---|---|---|
| Cash | $20,000 | |
| Accounts and notes receivable | | $28,777.62 |
| Inventories | | 25,060.70 |
| Depreciable assets (net) | | 31,674.76 |
| Other assets | 21,000 | 1,460.02 |
| Totals | 41,000 | 86,973.10 |
| Liabilities: | | |
| Accounts payable | 21,000 | 64,924.83 |
| Notes payable | | 115,186.08 |
| Accrued expenses | | 94,817.58 |
| Partners' capital accounts: | | |
| John Allen Boyle | | (187,955.39) |
| George A. Butler | 20,000 | |
| Totals | 41,000 | 86,973.10 |

The opening balance sheet discloses the advances totaling $21,000 made to the partnership from petitioner's personal bank account and the sum of $20,000 invested in the partnership with part of the proceeds of the bank loan of $50,000. The closing balance sheet reflects the advances of $21,655.81 included in accounts payable, and the $30,000 loaned to the partnership by petitioner for which he received a note payable executed by the general partner. The closing balance sheet shows that petitioner had lost also his original investment.

The $50,000 loan, renewed from time to time by the Dallas bank between July 16, 1951, and March 13, 1953, was finally paid by petitioner on May 22, 1953. The bank ledger sheets disclose that interest was accrued and paid on said loan during 1951, 1952, and 1953 in the respective amounts of $1,011.12, $2,194.46, and $1,044.46.

On July 18, 1956, an internal revenue agent, after an investigation of the partnership returns, submitted his report disclosing a change in the net loss reported from $203,377.43 to $202,832.43, thus decreasing the partners' distributive share as disclosed by the report as follows:

| | |
|---|---|
| John Allen Boyle | $182,832.43 |
| George A. Butler (no change) | 20,000.00 |
| Loss as corrected | 202,832.43 |

In the statutory notice of deficiency dated May 31, 1957, respondent determined that, of the $71,655.81—"Loss on liquidation of National Housing Company, Ltd."—claimed in petitioners' 1952 return, the amount of $50,000 was not allowable as an ordinary loss but was allowable as a nonbusiness bad debt to be treated as a short-term capital loss.

### OPINION.

Respondent determined the amount of $50,000 loaned by petitioner to a limited partnership, which became worthless during the taxable year 1952, was not "incurred" in petitioner's trade or business and, therefore, was a nonbusiness bad debt within the meaning of section 23(k)(4),[1] 1939 Code, to be treated as a short-term capital loss. Contesting respondent's determination, petitioner avers that all of the money which he loaned to the partnership, in the aggregate amount of $51,655.81 during 1951 and 1952, was loaned as a special or limited partner to further the business of the partnership, and, hence, that said amount was deductible in full as a business bad debt pursuant to section 23(k)(1).[1]

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

(k) BAD DEBTS.—

(1) GENERAL RULE.—Debts which become worthless within the taxable year; * * *. This paragraph shall not apply in the case of a taxpayer other than a corporation,

As reflected in the opening statements of counsel, the only question to be resolved is whether or not the aggregate loans of $50,000 in issue were business or nonbusiness debts. The fact that the loans were made and that they became worthless in 1952 is not disputed, and respondent, in his statutory notice, determined they were deductible as nonbusiness bad debts.

Respondent does not question the bona fides or validity of National as a limited business partnership under the laws of the State of Texas,[2] nor does he claim that it is not to be treated as a partnership for income tax purposes under section 3797 [3] of the 1939 Code which provides, in part, that "A person shall be recognized as a partner for income tax purposes if he owns a capital interest in a partnership in which capital is a material income-producing factor." Moreover, respondent does not urge that the Code or regulations make any distinction here significant between ordinary and limited partnerships. See sec. 39.3797–5, Regs. 118; I.T. 2904, XIV-2 C.B. 151; G.C.M. 2467, VII-2 C.B. 188, 191.

Whether a taxpayer's activities constitute the carrying on of a trade or business so that bad debts proximately related thereto may be

---

with respect to a non-business debt, as defined in paragraph 4 of this subsection.

\*   \*   \*   \*   \*   \*   \*

(4) NON-BUSINESS DEBTS.—In the case of a taxpayer, other than a corporation, if a non-business debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months. The term "non-business debt" means a debt other than a debt evidenced by a security as defined in paragraph (3) and other than a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business.

[2] Tex. Rev. Civ. Stat.
Art. 6111 [1937] General and special partners
Such partnerships may consist of one or more persons, who shall be called the general partners, and who shall be jointly and severally responsible as general partners now are by law; and of one or more persons who shall contribute in actual cash a specific sum, or its equivalent in other property, as capital to the common stock, who shall be called special partners, and who shall not be liable for the debts of the partnership beyond the fund so contributed by him, or them, to the capital, in cash or other property, and in case other property than cash is contributed, the partner contributing same shall certify as to the cash value thereof and should it be determined in a suit, or suits, by a creditor, or creditors, that said property did not at the time of contribution, have the cash value placed thereon by said special partner, the said special partner shall be liable to the amount that said property lacked of having the value placed thereon by said partner.
Art. 6112 [1846] General partners only to act
The general partners only shall be authorized to transact business and sign for the partnership and to bind the same.

[3] SEC. 3797. DEFINITIONS.
(a) When used in this title, where not otherwise distinctly expressed or manifestly incompatible with the intent thereof—

\*   \*   \*   \*   \*   \*   \*

(2) PARTNERSHIP AND PARTNER.—The term "partnership" includes a syndicate, group, pool, joint venture, or other unincorporated organization, through or by means of which any business, financial orperation, or venture is carried on, and which is not, within the meaning of this title, a trust or estate or a corporation; and the term "partner" includes a member in such a syndicate, group, pool, joint venture, or organization. A person shall be recognized as a partner for income tax purposes if he owns a capital interest in a partnership in which capital is a material income-producing factor, whether or not such interest was derived by purchase or gift from any other person.

deducted in full is essentially a question of fact, requiring an examination of the particular facts in each case. *Higgins* v. *Commissioner*, 312 U.S. 212, 217 (1941) ; *Pokress* v. *Commissioner*, 234 F. 2d 146, 150 (C.A. 5, 1956), affirming a Memorandum Opinion of this Court. The petitioner, of course, bears the burden of proof.

While respondent does not contend otherwise, we think it helpful for continuity to mention that, as we said at page 343 in *Dwight A. Ward*, 20 T.C. 332 (1953), affd. 224 F. 2d 547 (C.A. 9, 1955), "By reason of being a partner in a business petitioner was individually engaged in business." See also *Robert Cluett III*, 8 T.C. 1178, 1180 (1947) ; *Flood* v. *United States*, 133 F. 2d 173, 179 (C.A. 1, 1943).

Essentially, it is petitioner's position that the loans in question were made to furnish operating capital for National, i.e., the limited partnership, to enable it to develop and sell its products, and, therefore, that the bad debts were proximately related to the conduct of and incurred in his trade or business as the exigencies of the situation required and within the intendment of section 23(k)(1), *supra.*

We have recognized that a partnership may be indebted to one of its members. *Samuel Burns*, 13 B.T.A. 579, 582 (1928), acq. VII-2 C.B. 6; *J. C. Wynne*, 47 B.T.A. 731, 735 (1942). See also *Finucane* v. *United States*, 85 Ct. Cl. 663, 21 F. Supp. 122 (1937).

Upon the facts, it is clear that the loans of $50,000 were made by petitioner in furtherance of the business of which he was a limited partner and were proximately related to the business activities of the partnership. Moreover, it appears from the partnership agreement that the furnishing or arranging for financing by petitioner was envisaged as a vital factor in the very existence of the business.

With this background, it is apparent that the principles followed in *Montell Davis*, 11 T.C. 538 (1948), and *Harding* v. *United States*, 125 Ct. Cl. 585, 113 F. Supp. 461 (1953), are here applicable.

In *Montell Davis*, *supra*, the taxpayer entered into a joint venture and loaned various sums to his coventurer for expenses of the enterprise. The coventurer had agreed to give taxpayer an interest in the business. The debt due taxpayer by the coventurer became worthless. In holding that the debt was a business bad debt, we said, in part (p. 542) :

> There remains for consideration the bad debt issue as to which we have made an ultimate finding of fact favorable to petitioner. The record establishes that the money was lent by petitioner to Vaughn [the coventurer] in connection with their business relation under a promise of reimbursement, which reimbursement was never made. * * *

In *Harding* v. *United States*, *supra*, the taxpayer, a partner in a brokerage firm, loaned money to Watts, a broker, to purchase a seat on the New York Stock Exchange with the understanding that the latter would devote his first attention to the partnership business. The tax-

payer borrowed the money in his individual capacity because the partnership was unable or it was deemed inadvisable to borrow it for this purpose. Part of the loan was not repaid by Watts, and taxpayer charged off the unpaid balance as a business bad debt. The bad debt deduction was allowed in 1946, the year charged off, but the Commissioner disallowed a carryback under section 122(d)(5) of the 1939 Code on the ground that the debt was not attributable to the operation of a trade or business regularly carried on by the taxpayer. Resolving the issue in favor of the taxpayer in the suit for refund, the Court of Claims said (p. 463) :

> Plaintiff's business was a brokerage business carried on through the instrumentality of the brokerage firm of Chas. D. Barney & Company and its successor, Smith, Barney & Company. Plaintiff borrowed the money in order to promote the business of this partnership, and, therefore, his own business, and it would, therefore, seem plain that the loss sustained by plaintiff on account of this bad debt was a loss attributable to the carrying on of his business through the instrumentality of the brokerage firm of Chas. D. Barney & Company and its successor.

> Plaintiff's sole purpose in borrowing the money was to promote the interests of this partnership. Plaintiff's business was carried on through the partnerships, and the loan therefore was made to promote plaintiff's business. The loss of a portion of the loan was, therefore, directly attributable to the carrying on of plaintiff's business.

Respondent, on brief, argues that Butler was the senior partner in a large law firm, and, therefore, his business or profession was that of a lawyer. This is factually true as far as it goes, but it is well settled that a taxpayer may engage in more than one trade or business (profession) for income tax purposes. *Oliver* v. *Commissioner*, 138 F. 2d 910 (C.A. 4, 1943), affirming per curiam a Memorandum Opinion of this Court. Moreover, in *Oscar K. Eysenbach*, 10 B.T.A. 716, 721 (1928), we pointed out that "in order to constitute a 'net loss,' it is not necessary that the taxpayer should sustain the loss in his principal business or vocation." See also *E. M. Elliott*, 15 B.T.A. 494, 497 (1929).

Respondent also argues that petitioner has failed to sustain his burden of proving he was in the business of lending money. He cites a number of authorities, including *Rudolf A. Zivnuska*, 33 T.C. 226 (1959), which are clearly distinguishable from the instant case on the facts. In *Zivnuska*, for example, the taxpayer, principal stockholder of a corporation in receivership, made advances of cash to or through the president of the insolvent corporation to satisfy claims against it.

We see no occasion to discuss the cited authorities on this point in our opinion, however, because petitioner does not contend that he was engaged in a separate business as a financier. His position is that he made the loans as a partner in a business partnership in furtherance of and in proximate relationship to the business of the partnership. As already indicated, we agree with petitioner's view.

Upon the basis of the foregoing discussion, we hold that the debts in issue, totaling $50,000, are deductible in full as business bad debts under section 23(k)(1) for the year 1952 (there being no issue as to the fact and year of worthlessness).

*Decision will be entered under Rule 50.*