GLADYS G. WILKINSON, ET AL.,* PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 3025–63, 3066–63, 3067–63. Filed October 17, 1967.

*Jack M. Harrison,* for the petitioners.
*Richard L. Fishman,* for the respondent.
*James J. Cotter* and *Richard L. Fishman,* for the respondent.

OPINION

MULRONEY, *Judge:* These consolidated cases involve deficiencies in income taxes as determined by respondent, without making any adjustment for the subsequently claimed net operating loss carrybacks from 1962, as follows:

| Docket No. | Petitioner | Year | Deficiency |
|---|---|---|---|
| 3025–63 | Gladys G. Wilkinson | 1959 | $17,640.12 |
| 3066–63 | Reed W. Wilkinson and Irene Wilkinson | 1959 | 14,833.84 |
| 3067–63 | William C. Wilkinson and Berna L. Wilkinson | 1959 | 1,581.93 |

The issues are (1) did the respondent properly determine that the petitioners realized taxable gain upon the satisfaction and/or dispo-

---

*Cases of the following petitioners are consolidated herewith : Estate of Reed W. Wilkinson, Deceased, and Irene Wilkinson, Executrix and Individually, docket No. 3066–63 ; William C. Wilkinson and Berna L. Wilkinson, docket No. 3067–63

sition of their installment obligations pursuant to section 453 of the Internal Revenue Code of 1954[1] when the debtor corporation liquidated and they, as shareholders, received its assets in 1959, and (2) in the alternative, did the respondent properly determine that Gladys G. Wilkinson realized taxable gain upon the receipt of the installment obligations from the partnership in 1959?

All of the facts have been stipulated and they are found accordingly.

The petitioner Gladys G. Wilkinson is an individual and resided in Calipatria, Calif., during 1959. Her Federal income tax return for the year 1959 was filed with the district director of internal revenue in Los Angeles, Calif.

Reed W. Wilkinson and petitioner Irene Wilkinson were husband and wife during 1959, and resided in Calipatria, Calif. during said year, and their joint Federal income tax return for said year was filed with the district director of internal revenue in Los Angeles, Calif. Reed died on March 16, 1966, and his wife, Irene Wilkinson, is the duly appointed and acting executrix of his estate.

The petitioners William C. Wilkinson and Berna L. Wilkinson were husband and wife during 1959, and resided in Calipatria, Calif., during said year, and their joint Federal income tax return for said year was filed with the district director of internal revenue in Los Angeles, Calif.

Ray Wilkinson, who died on October 2, 1955, was the husband of Gladys. William, Reed, and Ray were brothers.

On or about January 17, 1947, a corporation by the name of Wilkinson Bros., Inc., was formed under the laws of the State of California. The corporation issued 750 of its $100 par value shares as follows:

| | Number of Shares |
|---|---|
| William C. Wilkinson | 125 |
| Berna L. Wilkinson | 125 |
| Reed W. Wilkinson | 125 |
| Irene W. Wilkinson | 125 |
| Gladys G. Wilkinson | 125 |
| Duane Wilkinson (son of Ray and Gladys) | 41⅔ |
| Gary Wilkinson (son of Ray and Gladys) | 41⅔ |
| Linda Lee Wilkinson (daughter of Ray and Gladys) | 41⅔ |

On or about February 1, 1947, William, Reed, and Ray sold various items of real and personal property to the corporation for the total sum of $785,025.51. In satisfaction of the purchase price the corporation paid to each of the three brothers $11,657.17 in cash and issued to each of them its promissory note in the principal sum of $250,000, bearing interest at the rate of 3 percent per annum, with principal

---

[1] All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.

and interest payable in annual installments of $25,000 or more on July 1 of each year commencing July 1, 1947.

It is stipulated the gain resulting from the aforementioned sale as to each of the three brothers amounted to 70.46 percent of the gross selling price and each of the three brothers made an election to report said gain on the installment basis.

On October 10, 1952, at which time the principal balance of each of the aforementioned promissory notes was $200,000, with unpaid delinquent interest in the amount of $19,676.71, the three brothers, Ray, Reed, and William, each entered into a written extension agreement with the corporation incorporating the following terms:

(a) The $200,000.00 balance due on principal was to be paid in equal annual installments of $10,000.00 each, beginning on the 1st day of July, 1953.

(b) On or before November 1, 1953, the Corporation was to pay Ray, Reed and William the sum of $3,001.71 each on the unpaid delinquent interest and the remaining balance of the unpaid delinquent interest in the sum of $16,675.00 was to be paid to each in five equal annual installments, beginning July 1, 1953.

(c) The interest accruing from and after October 10, 1952, was to be paid annually beginning July 1, 1953.

When Ray died on October 2, 1955, the principal balance of the promissory note which he held of the corporation was in the amount of $191,956.60. In the settlement of Ray's estate, a two-thirds interest in said note was distributed to Gladys, and a one-third interest was distributed to a testamentary trust created by the will of Ray.

On December 2, 1958, the principal balances due on the aforementioned promissory notes were as follows:

| | |
|---|---|
| William | $147,070.00 |
| Reed | 147,070.00 |
| Gladys (⅔ interest in Ray's note) | 98,046.67 |
| Ray Wilkinson Trust (⅓ interest in Ray's note) | 49,023.33 |

As of December 2, 1958, new promissory notes reflecting the aforementioned principal balances as of said date, rather than the original face amounts, were executed by the corporation to William, Reed, Gladys, and the Ray Wilkinson Trust. At the end of the promissory note payable to Gladys appears the following form of assignment executed by her:

### ASSIGNMENT

I hereby transfer and assign to Wilkinson Brothers, a partnership, of Calipatria, California, all my right, title and interest, in, to, and under the within promissory note dated December 2, 1958. Said transfer and assignment is made in consideration of an increase in and in addition to my capital investment in said partnership in an amount equal to the value of said promissory note, including both principal and interest thereon.

Dated: December 12, 1958.

(S) Gladys Wilkinson
GLADYS WILKINSON

An identical form of assignment, dated December 12, 1958, executed by William and Reed appears at the end of their respective promissory notes.

Following the execution of the aforementioned promissory notes by the corporation and the execution of the aforementioned assignment forms by Gladys, William, and Reed, the combined documents were delivered to David Beauchamp, bookkeeper of Wilkinson Bros., a partnership.

Wilkinson Bros., a partnership, came into existence in 1935. Its activities consisted of farming, cow feeding, and custom cattle feeding. The partners and their proportionate interests in the partnership were as follows:

|  | Percent |
| --- | --- |
| Gladys | 25 |
| William | 25 |
| Reed | 25 |
| John Wilkinson (son of William) | 25 |

Gladys had held her interest in the partnership since October 11, 1957.

On December 12, 1958, the following journal entry was made on the books of the partnership:

|  | Debit | Credit |
| --- | --- | --- |
| Note receivable—William Wilkinson | $147,070.00 | |
| Note receivable—Reed Wilkinson | 147,070.00 | |
| Note receivable—Gladys Wilkinson | 98,046.67 | |
| Unrealized profit on installment notes | | $276,334.72 |
| William C. Wilkinson—capital account | | 43,444.48 |
| Reed Wilkinson—capital account | | 43,444.48 |
| Gladys Wilkinson—capital account | | 28,962.99 |

On January 2, 1959, the corporation adopted a plan of complete liquidation under the provisions of section 333 of the Internal Revenue Code of 1954, which plan provided, in part, as follows:

Now, THEREFORE, BE IT RESOLVED, that the distribution of the assets of this corporation remaining after payment, or provision for payment, of the known debts and liabilities of this corporation shall be made within the calendar month of January, 1959, to the shareholders of this corporation, as shown by the books and records of this corporation, in the following manner:

During the month of January 1959, all of its assets were distributed to its shareholders, including William, Reed and Gladys. Among the liabilities of the corporation assumed by Gladys as a result of the liquidation was the promissory note of December 2, 1958, in which she was designated as the payee, and in which she had assigned her interest to the partnership in 1958. Similarly, William and Reed each assumed the promissory note in which he was designated as the payee, and in which he had assigned his interest to the partnership in 1958.

An analysis of the assets received in liquidation and liabilities assumed by stockholders is as follows:

ASSETS RECEIVED AND LIABILITIES ASSUMED BY STOCKHOLDERS IN LIQUIDATION OF WILKINSON BROS., INC. (SEC. 333, I.R.C.)

| | William and Berna | Reed and Irene | Gladys | Duane, Gary and Linda | Total |
|---|---|---|---|---|---|
| Shares owned | 240 | 240 | 115 | 125 | 720 |
| Percent | 33⅓ | 33⅓ | 15.97 | 17.37 | 100 |
| *Assets received in liquidation (fair market value)* | | | | | |
| Income tax refunds | $2,071.21 | $2,071.21 | $992.45 | $1,078.75 | $6,213.62 |
| Interest on income tax refunds | 347.83 | 347.83 | 166.67 | 181.17 | 1,043.50 |
| Note receivable—Wilkinson Bros. (partnership) | 58,635.33 | 58,635.33 | 58,635.33 | | 175,905.99 |
| Buildings, machinery and equipment | 1,477.23 | 152.87 | 3,664.43 | | 5,294.53 |
| Tiling and ditches | 19,226.84 | 7,535.70 | 4,735.20 | | 31,497.74 |
| Real estate | 265,962.59 | 278,978.09 | 200,711.08 | 77,555.97 | 823,207.73 |
| Total | 347,721.03 | 347,721.03 | 268,905.16 | 78,815.89 | 1,043,163.11 |
| *Liabilities of corporation assumed* | | | | | |
| Note payable—Equitable Life Assurance Society | 76,666.67 | 76,666.67 | 60,689.00 | 15,977.66 | 230,000.00 |
| Note payable—Wilkinson Bros. (partnership) | 147,070.00 | 147,070.00 | 98,046.67 | | 392,186.67 |
| Note payable—Ray Wilkinson Trust | | | 49,023.33 | | 49,023.33 |
| Extension agreement—William Wilkinson | 3,335.00 | | | | 3,335.00 |
| Extension agreement—Reed Wilkinson | | 3,335.00 | | | 3,335.00 |
| Extension agreement—Ray Wilkinson trust | | | 3,335.00 | | 3,335.00 |
| Total | 227,071.67 | 227,071.67 | 211,094.00 | 15,977.66 | 681,215.00 |
| Net assets received in liquidation (F M value) | 120,649.36 | 120,649.36 | 57,811.16 | 62,838.23 | 361,948.11 |

Gladys withdrew from the partnership on June 24, 1959, and the partnership books show that one of the assets she received from the partnership in the liquidation of her interest therein was the promissory note of the corporation in which she was designated as the payee. An analysis of Gladys' capital account on the books of the partnership for the years 1958 and 1959 is as follows:

| | |
|---|---|
| Capital account Jan. 1, 1958 | $11,911.39 |
| Capital contributed during 1958 (basis in installment obligation) | 28,962.99 |
| Share of partnership income 1958 | 11,783.47 |
| Subtotal | 52,657.85 |
| Less: Withdrawals 1958 | (5,025.00) |
| Balance Dec. 31, 1958 | 47,632.85 |
| Less: Withdrawals 1959 | (5,000.00) |
| Distributions in liquidation: | |
| Basis in installment obligation | (28,962.99) |
| Other property | (13,669.86) |
| Capital account June 24, 1959 | 0 |

The journal entry reflected upon the books of the partnership as of June 24, 1959, disclosing the distribution to Gladys of the installment

obligation which she had assigned to the partnership in 1958, was as follows:

|  | Debit | Credit |
|---|---|---|
| Gladys Wilkinson—capital account | $82, 962. 99 |  |
| Unrealized profit on installment notes | 69, 083. 68 |  |
| Note receivable—Gladys Wilkinson |  | $98, 046. 67 |

The respondent determined deficiencies in each of the petitioner's income tax for the year 1959 as follows:

| Gladys G. Wilkinson | $17, 640. 12 |
|---|---|
| Estate of Reed W. Wilkinson, deceased, Irene Wilkinson, executrix, and Irene Wilkinson, individually | 14, 833. 84 |
| William C. Wilkinson and Berna L. Wilkinson | 1, 581. 93 |

As a result of deductions for carrybacks of operating losses sustained during the year 1962 by Reed W. and Irene Wilkinson and William C. and Berna L. Wilkinson, the above-mentioned deficiency determined as to the Estate of Reed W. Wilkinson, deceased, Irene Wilkinson, executrix, and Irene Wilkinson, individually, is reduced to $7,927.43, and the deficiency determined as to William C. Wilkinson and Berna L. Wilkinson is eliminated in its entirety.

Respondent determined that as a result of the liquidation of Wilkinson Bros., Inc., in 1959, William, Reed, and Gladys received satisfaction for their installment notes and therefore they realized long-term capital gains in the respective amounts of $103,625.52, $103,625.52, and $69,083.68.

By amendment to answer in docket No. 3025–63, respondent alleges in the alternative that if Gladys did not realize the gain on her installment obligation when the corporation liquidated in 1959 then she realized such gain when she withdrew from the partnership in June of 1959 and received the note in distribution.

Section 453(d)[2] imposes a tax when installment obligations are satisfied, transferred, sold, or "otherwise disposed of." The issue before us is whether the January 1959 liquidation of the corporation triggered the application of section 453(d), resulting in taxable gain to petitioners. Petitioners seem to agree that if they actually held the promissory notes at the time of the liquidation, the notes would have been satisfied since the obligor and obligee with respect to each note would

---

[2] (d) GAIN OR LOSS ON DISPOSITION OF INSTALLMENT OBLIGATIONS.—

(1) GENERAL RULE.—If an installment obligation is satisfied at other than its face value or distributed, transmitted, sold, or otherwise disposed of, gain or loss shall result to the extent of the difference between the basis of the obligation and—

(A) the amount realized, in the case of satisfaction at other than face value or a sale or exchange, or

(B) the fair market value of the obligation at the time of distribution, transmission, or disposition, in the case of the distribution, transmission, or disposition otherwise than by sale or exchange.

Any gain or loss so resulting shall be considered as resulting from the sale or exchange of the property in respect of which the installment obligation was received.

then be the same person. But the petitioners contend that, since these notes had been assigned to the partnership on December 12, 1958 (just before the corporate liquidation), it cannot be said that they still held the notes at the time of liquidation and consequently there was no disposition of the notes within the meaning of section 453(d).

Respondent argues that the formal assignment of the notes to the partnership must be disregarded as a sham; that the petitioners should still be regarded as holders of the notes at the time of corporate liquidation; and that, as a result of the liquidation, the petitioners became both obligors and obligees of the notes, resulting in a disposition of such notes under section 453(d).

We agree with the respondent. If we assume for the moment that the December 1958 assignment of the notes was in fact a sham, then the petitioners, by assuming the liabilities of the corporation in the January 1959 liquidation, including its liability on the notes held by petitioners, became both obligors and obligees on the notes. Such a merger of the estates of creditor and debtor clearly constituted a disposition of the installment obligations within the meaning of section 453(d). *Nebraska Seed Co.* v. *United States*, 116 F. Supp. 740 (Ct. Cl. 1953); cf. *Burrell Groves, Inc.*, 22 T.C. 1134 (1954), affd. 223 F. 2d 526 (C.A. 5, 1955). Petitioners received all of the corporate assets in the liquidation and the records show that the fair market value of these assets was in excess of the face amount of the installment obligations. Under these circumstances, we believe petitioners would be taxable in 1959 on the remaining deferred profits represented by the installment obligations which were "disposed of" in that year within the meaning of section 453(d).

We do not believe that, under the facts of this case, the transparent device of making a formal assignment of the installment obligations to the partnership blocks the application of section 453(d). We recognize, of course, that a taxpayer has the legal right to decrease the amount of what otherwise would be his taxes or avoid them altogether, by means which the law permits, but the realities of a particular transaction must be examined in order to determine whether what was done, apart from the tax motive, was the thing which the statute intended. *Gregory* v. *Helvering*, 293 U.S. 465 (1935).

Here it is evident that the hurried assignment of the installment obligations to the partnership just prior to the corporate liquidation was motivated solely by tax-avoiding reasons. In order to avoid the impact of section 453(d) upon petitioners when the corporation was liquidated, the attorney for the petitioners devised an adroit plan which he outlined in a letter dated October 30, 1958. Under this plan the petitioners, prior to the liquidation, would assign the installment obligations to the partnership as a contribution to its capital. Although

this would constitute a disposition of the obligations, no gain would be recognized either to the partners or to the partnership by reason of section 721.[3] The attorney's letter also pointed out that later, "After a reasonable interval of time" it might be possible for the partnership to reassign the installment notes back to the petitioners. While this would be a disposition of the obligations by the partnership, it was shielded from any tax by section 731(b) which provides that "No gain or loss shall be recognized to a partnership on a distribution to a partner of property, including money." Nor would the partners incur any tax upon such reassignment because of section 731(a)(1) which provides that "In the case of a distribution by a partnership to a partner * * * gain shall not be recognized to such partner, except to the extent that any money distributed exceeds the adjusted basis of such partner's interest in the partnership immediately before the distribution."

Section 453 is nothing more than a tax-timing statute. Actually, the gain is realized in the year of sale and section 453 merely allows the taxpayer to spread the tax over a period of years. No such meaningless maneuvers as are present here can be effective to eliminate any portion of the gain admittedly realized in the year of sale. It is perfectly obvious that the assignment of the installment obligations to the partnership was for the purpose of avoiding the tax on the gain already realized on the 1947 sales, which gain had been stated in the taxpayers' 1947 returns when they sought the privilege of making further reports for tax purposes in subsequent years. See *Weyl-Zuckerman & Co.*, 23 T.C. 841, affirmed per curiam 232 F. 2d 214 (C.A.9, 1956).

It does not appear that the partnership, which had been in existence since 1935 and was engaged in farming, cow feeding, and custom cattle feeding, was in need of any additional working capital in order to carry on its operations. Indeed, the record clearly shows that there was no intention on anyone's part that the installment obligations, once they were held by the partnership, would produce any income whatever. Even before the plan was carried out, it appears understood in the attorney's letter that "the notes would not be income producing to the partnership." Moreover, no entry or record was or has ever been made showing that the partnership received payment of either principal or interest in connection with the installment obligations, nor were any accruals ever entered or recorded. It seems to us, therefore, that the assignment was purely ritualistic in nature and that it was not intended to have any economic significance.

---

[3] Sec. 721 provides that "No gain or loss shall be recognized to a partnership or to any of its partners in the case of a contribution of property to the partnership in exchange for an interest in the partnership."

Viewed as a whole, the petitioners' plan would seem to produce some rather startling results. When the petitioners sold real and personal property to the corporation in 1947 for $785,025.51, the stipulated gain resulting from the sale amounted to 70.46 percent of the gross selling price. They chose to report this gain on the installment basis, which merely meant that they were allowed to defer reporting the realized profits over an extended period of time. As of December 1958 there still remained unreported deferred profits of some $275,000. Under petitioners' plan it would seem that these deferred profits would never be reported by anyone—neither when the installment obligations were transferred to the partnership nor when the partnership transferred them back to the petitioners. In other words, the installment obligations would simply vanish for tax purposes. We cannot believe that a hurriedly organized tour through sections 721 and 731 could yield such an absurd result. Nor do we believe that section 453(d), which triggers the taxation of deferred profits when certain events take place, can be avoided so easily. The purpose of Congress in enacting section 44(d) of the Revenue Act of 1928 (the predecessor of section 453(d)) is readily apparent in the following statement:

The installment basis accords the taxpayer the privilege of deferring the reporting at the time of sale of the gain realized, until such time as the deferred cash payments are made. To prevent the evasion the subsection terminates the privilege of longer deferring the profit if the seller at any time transmits, distributes, or disposes of the installment obligations and compels the seller at that time to report the deferred profits. * * * [H. Rept. No. 2, 70th Cong., 1st Sess., 1939–1 C.B. (Part 2) 384, 394.]

We believe that the case of *J. C. Wynne*, 47 B.T.A. 731 (1942), is clearly distinguishable. We recognize that a partnership may be indebted to its partners and that the partners may be indebted to their partnership. In the *Wynne* case, a corporation (controlled by taxpayers) was liquidated and its assets, subject to its liabilities, were transferred to a successor partnership of which the taxpayers were members. The partnership also assumed liability on an installment obligation payable to one of the taxpayers. We rejected respondent's contention that the entire unpaid balance of the installment obligation was at that point subjected to tax under section 44(d) of the Revenue Act of 1938. We stated that there was nothing in the circumstances of that case which "casts doubt upon the continued existence of the installment obligation, the continued liability of the partnership for its discharge, and its continued status as a source of taxable income in the hands of these [taxpayers]." We find nothing in the *Wynne* case that is helpful to petitioners in the case before us.

We believe that under these facts the purported assignment of the installment obligations to the partnership may be disregarded and

that, upon the liquidation of the corporation in January 1959, the petitioners became both obligors and obligees on the installment obligations, resulting in a disposition of such obligations within the meaning of section 453(d). We sustain the respondent on this issue.

*Decisions will be entered under Rule 50.*